**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| THOMAS WRAY HERNDON, | Case No. 3:22-CV-00271-ART-CLB |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]** |
| v. | [ECF No. 37] |
| STATE OF NEVADA ex rel. NDOC, *et al.*, | |
| Defendants. | |

This case involves a civil rights action filed by Plaintiff Thomas Wray Herndon ("Herndon") against Defendants Scott Davis ("Davis"), Tim Garrett ("Garrett"), Carter Potter ("Potter"), Brian Williams ("Williams"), and Harold Wickham ("Wickham") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF No. 37.) Herndon opposed the motion, (ECF No. 41), and Defendants replied. (ECF No. 42.)

For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 37), be granted in part and denied in part.

**I.    BACKGROUND**

**A.    Procedural History**

Herndon is an inmate presently incarcerated in the Nevada Department of Corrections ("NDOC") and housed at the Lovelock Correctional Center ("LCC"). On June 16, 2022, Herndon submitted a civil rights complaint under 42 U.S.C. § 1983 for events that occurred while Herndon was incarcerated at LCC. (ECF Nos. 1, 1-1.) The claims underlying this lawsuit relate to Herndon's ability to participate in the 2020 Passover services as a Messianic Jew. On August 12, 2022, the District Court entered a screening order on Herndon's complaint, allowing Herndon to proceed on the following claims: (1)

---

[1]    This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

1   First Amendment free exercise; (2) violation of the Religious Land Use and

2   Institutionalized Persons Act of 2000, 42 U.S.C. § 2000 ("RLUIPA"); (3) First Amendment

3   Establishment Clause; and (4) Fourteenth Amendment equal protection. (ECF No. 3 at

4   13.) Each claim was allowed to proceed against the following Defendants: Williams,

5   Garrett, Wickham, Potter, and Davis. *Id.*

6        On November 29, 2023, Defendants filed the instant motion arguing summary

7   judgment should be granted because: (1) Defendants did not substantially burden

8   Herndon's right to religious exercise and the NDOC policy in question was implemented

9   in furtherance of a legitimate penological purpose; (2) Defendants did not prefer other

10  religions over Messianic Judaism; (3) Defendants did not discriminate against Herndon

11  on the basis of his religion; (4) Garrett, Wickham, Potter, and Davis were not personally

12  involved in the underlying allegations; (5) Herndon's request for relief under RLUIPA is

13  moot; and (6) Defendants are entitled to qualified immunity. (ECF No. 37.)

14       **B.      Factual Summary**

15       The following facts are undisputed: At the time relevant to this action, Defendant

16  Williams was employed as the Deputy Director of Programs for the NDOC. (ECF No. 37-

17  4.) Defendant Garrett was employed as the Warden of LCC. (ECF No. 37-6.) Defendant

18  Wickham was employed as the Deputy Director of Operations for the NDOC. (ECF No.

19  37-12.) Defendant Potter was employed as a Correctional Caseworker Specialist at LCC.

20  (ECF No. 37-5.) Defendant Davis was employed as a Chaplain at LCC. (ECF No. 37-10.)

21       Administrative Regulation ("AR") 810 is the regulation promulgated by NDOC

22  related to religion issues as required by NRS 209.131.[2] AR 810.02 recognizes that

23  resources are limited, and in recognition of the limited resources, AR 810.02(2) provides

24  programs and activities to be established and governed by the "Religious Practice

25  _____

26  [2]     *AR 810 Religious Faith Group Activities and Programs*, Nevada Department of
Corrections,    https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_
27  Regulations/AR%20810%20Religious%20Faith%20Group%20Activities%20and%20Pro
grams%20Final%2011-15-16.pdf (last visited March 12, 2024).

28

1    Manual." *Id.* The Religious Practice Manual is promulgated under AR 810.3. (ECF No.

2    37-1.) AR 810.3 details requirements for inmates who wish to request special Holy Day

3    food. (*Id.* at 18-20.) Specifically, inmates are required to submit a written Inmate Request

4    Form ("Kite") to the Chaplain/Designee, at least 60 days but no more than 70 days in

5    advance of the holy day. (*Id.* at 18-19.)

6         On December 16, 2019, Herndon submitted a Kite to be placed on the 2020

7    Passover List. (ECF No. 37-2.) The same day, Defendant Davis noted on the Kite, "You

8    are now on the list for Passover." (*Id.*) In 2020, Passover began on April 8, 2020.

9         Per NDOC's policies and procedures, inmates are required to sign up for the

10   Common Fare Meal Program ("CFM") and be declared of the Jewish faith in order to

11   receive all Kosher meals during the entire period of Passover. (ECF Nos. 37-3; 37-4.)

12   Herndon signed up for CFM on February 9, 2020, and his request was approved on March

13   9, 2020. (ECF No. 37-7.)

14        On March 3, 2020, NDOC Deputy Director Williams issued a Memorandum

15   ("March 3rd Memo") detailing that NDOC would be making exceptions to this procedure

16   and attempting to obtain additional meals for Passover. (ECF No. 37-3; 37-4.)

17   Specifically, two actions were to take place in order for inmates to receive Kosher for

18   Passover: (1) that the institutional chaplain verify that the inmate's declared faith is

19   Jewish; and (2) that the inmate sign up for CFM no later than 7 days prior to the start of

20   Passover. (*Id.*) However, in order to take advantage of the one-time only accommodation

21   for 2020, NDOC inmates were required to submit a Kite to the Institutional Chaplain within

22   two calendar days of receiving the Memo. (*Id.*) On March 15, 2020, Herndon submitted a

23   Kite requesting to be placed on the full Passover list. (ECF No. 37-9.)

24        On April 7, 2020, Herndon submitted an informal grievance, Grievance No. 2006-

25   30-99537, regarding the alleged denial of his Passover meals. (ECF No. 37-8.)

26        In response to the informal grievance, Potter stated:

27        You have alleged that through being denied Kosher for Passover meals,
          you are being forced to violate the tenants of your Messianic Jewish faith.
28

3

1
2
3
4
5

Information available through Jewish Voice Ministries indicates that while some Messianic Jews do follow Jewish dietary laws, that there is no such requirement for Messianic Jews to observe Jewish dietary laws. Those who do not participate in the Common Fare Diet but then want to participate in the special food available during Passover have additional questions raised about the sincerity of their beliefs on the subject. It appears that your desire to participate in the Kosher for Passover meals is a matter of personal preference.

6     (*Id.* at 12.)

7     Herndon appealed Grievance No. 2006-30-99537 to the first level, stating he

8     applied for CFM on February 12, 2020, and was approved on March 16, 2020. Thus, he

9     complied with both requirements to receive the Passover meals. He further stated that he

10    has "kept Passover" since 2016 and denying him unleavened bread and Kosher for

11    Passover is a violation of the tenants of his Messianic faith. (*Id.* at 5.)

12    In response to the First Level Grievance, Warden Garrett responded:

13
14
15
16
17
18

[t]he issue has been reviewed by Chaplain Davis, Culinary Supervisor Ms. Henry and at the direction of NDOC Deputy Director Williams those inmates who are not Jewish will not receive all meals during Passover, your faith affiliation is noted as Messianic Jewish which is not the same thing. It is noted that you have met one (participate in CFM) of the two criteria to participate in Passover meals but you do not meet the second requirement and as such you only received one meal on one day during Passover. You were advised of this policy change well in advance of Passover in order for you to have the ability to comply with the directive from Deputy Director Williams.

19    (*Id.* at 3.)

20    Herndon appealed this grievance to the second level, and Deputy Director

21    Wickham responded to the Second Level Grievance as follows: "As was stated in your

22    First Level Grievance response, the NDOC instituted a change regarding Passover meals

23    and based upon that change you were eligible to receive one meal on one day during

24    Passover. You were advised of this policy change well in advance of Passover." (ECF

25    No. 4 at 37.)

26    **II.    LEGAL STANDARDS**

27    "The court shall grant summary judgment if the movant shows that there is no

28    genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco*

5

1   *Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz*

2   *Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any

3   inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v.*

4   *Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its

5   burden for summary judgment, the nonmoving party is not required to provide evidentiary

6   materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477

7   U.S. at 322-23.

8            Where the moving party has met its burden, however, the burden shifts to the

9   nonmoving party to establish that a genuine issue of material fact actually exists.

10   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The

11   nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co.*

12   *v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation

13   omitted). In other words, the nonmoving party may not simply rely upon the allegations or

14   denials of its pleadings; rather, they must tender evidence of specific facts in the form of

15   affidavits, and/or admissible discovery material in support of its contention that such a

16   dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden

17   is "not a light one," and requires the nonmoving party to "show more than the mere

18   existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d

19   376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from

20   which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf*

21   *Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere

22   assertions and "metaphysical doubt as to the material facts" will not defeat a properly

23   supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v.*

24   *Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

25            When a *pro se* litigant opposes summary judgment, his or her contentions in

26   motions and pleadings may be considered as evidence to meet the non-party's burden to

27   the extent: (1) contents of the document are based on personal knowledge, (2) they set

28   forth facts that would be admissible into evidence, and (3) the litigant attested under

1    penalty of perjury that they were true and correct.  *Jones v. Blanas*, 393 F.3d 918, 923

2    (9th Cir. 2004).

3          Upon the parties meeting their respective burdens for the motion for summary

4    judgment, the court determines whether reasonable minds could differ when interpreting

5    the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City*

6    *of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in

7    the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3).

8    Nevertheless, the court will view the cited records before it and will not mine the record

9    for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party

10   does not make nor provide support for a possible objection, the court will likewise not

11   consider it).

12   **III.    DISCUSSION**

13          **A.    First Amendment Free Exercise Claim**

14          "The First Amendment, applicable to state action by incorporation through the

15   Fourteenth Amendment…prohibits government from making a law prohibiting the free

16   exercise [of religion]." *Hartmann v. Cal. Dep't. of Corr.*, 707 F.3d 1114, 1122 (9th Cir.

17   2013) (citations and quotation marks omitted, alteration original). The right to free

18   exercise is to be "jealously guarded." *Ward v. Walsh*, 1 F.3d 873, 876 (9th Cir. 1993). But

19   free exercise is necessarily limited by the fact of incarceration and "may be curtailed in

20   order to achieve legitimate correctional goals or to maintain prison security." *Id.* (citing

21   *O'Lone v. Est. of Shabazz,* 482 U.S. 342, 348 (1987); *Shakur v. Schriro*, 514 F.3d 878,

22   883-84 (9th Cir. 2008).

23          To implicate the Free Exercise Clause, a prisoner must establish his belief is both

24   sincerely held and rooted in religious belief. *See Shakur*, 514 F.3d at 884-85. "The Free

25   Exercise Clause does not require plaintiffs to prove the centrality or consistency of their

26   religious practice: 'It is not within the judicial ken to question the centrality of particular

27   beliefs of practices to faith.'" *Jones v. Slade*, 23 F.4th 1124, 1145 (9th Cir. 2022) (quoting

28   *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 689 (1989)). The test is whether

1  the plaintiff sincerely believes the conduct at issue is consistent with his faith. *Id.* (citation

2  omitted).

3      "A person asserting a free exercise claim must show that the government action in

4  question substantially burdens the person's practice of her religion." *Jones v. Williams*,

5  791 F.3d 1023, 1032 (9th Cir. 2015) (citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir.

6  1987), *aff'd sub nom. Hernandez*, 490 U.S. at 699).

7      "Once a claimant demonstrates that the challenged regulation impinges on his

8  sincerely held religious exercise, the burden shifts to the government to show that the

9  regulation is 'reasonably related to legitimate penological interests.'" *Jones*, 23 F.4th at

10  1144 (quoting *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015)).

11      In analyzing the legitimacy of regulation of a prisoner's religious expression, the

12  court is instructed to utilize the "reasonableness" factors set forth in *Turner*, 482 U.S. 78.

13  *See O'Lone*, 482 U.S. at 349; *Jones*, 791 F.3d at 1032; *Shakur*, 514 F.3d at 884. The

14  *Turner* reasonableness factors are: (1) "there must be a 'valid, rational connection'

15  between the prison regulation and the legitimate governmental interest put forward to

16  justify it"; (2) "whether there are alternative means of exercising the right that remain open

17  to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will

18  have on guards and other inmates, and on the allocation of prison resources generally";

19  (4) the "absence of ready alternatives" and "the existence of obvious, easy alternatives."

20  *Turner*, 482 U.S. at 89-91; *see also O'Lone*, 482 U.S. at 349.

21      "To ensure that courts afford the appropriate deference to prison officials, we have

22  determined that prison regulations alleged to infringe constitutional rights are judged

23  under a 'reasonableness' test less restrictive than that ordinarily applied to alleged

24  infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349 (citation

25  omitted).

26      While unclear, it seems Defendants dispute the sincerity of Herndon's religious

27  beliefs—specifically, his need to have Kosher meals for Passover as a Messianic Jew.

28  Defendants argue that the March 3rd Memo was reasonably related to a legitimate

1    penological purpose, i.e., "that all inmates are sincere in their beliefs to limit insincere

2    inmates attempting to obtain food items creating concerns for costs and the furtherance

3    of institutional safety and security." (ECF No. 37 at 10.)

4        The Court takes this to mean that Defendants question the sincerity of Herndon's

5    religious beliefs. This is coupled with the grievance responses, which imply: "Herndon's

6    sudden request for the CFM program for Passover seemed insincere." (ECF No. 37 at

7    19.) However, Herndon has provided specific evidence—through Grievance No. 2006-

8    30-99537— that he sincerely believes the conduct at issue is consistent with his faith.

9    (ECF No. 37-8 at 5.)

10        Thus, at a minimum, the Court finds there is a genuine dispute of material fact as

11   to whether Herndon's beliefs regarding his need to receive Kosher meals during Passover

12   as a Messianic Jew are sincerely held. Accordingly, the Court recommends that

13   Defendants' motion for summary judgment be denied as to the First Amendment free

14   exercise claim.[3]

15       **B.    RLUIPA Claim**

16   RLIUPA provides:

17       No government shall impose a substantial burden on the religious exercise
         of a person residing in or confined to an institution…even if the burden
18       results from a rule of general applicability, unless the government
         demonstrates that imposition of the burden on that person—(1) is in
19       furtherance of a compelling governmental interest; and (2) is the least
         restrictive means of furthering that compelling governmental interest.
20

21   42 U.S.C. § 2000cc-1(a). RLUIPA is "more generous to the religiously observant than the

22   Free Exercise Clause." *Jones*, 23 F.4th at 1139 (citations omitted).

23       "The Supreme Court has recognized RLUIPA as…[a] 'congressional effort[] to

24   accord religious exercise heightened protection from government-imposed burdens[.]'"

25   *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (quoting *Cutter v.*

26   _____

27   [3]     Even if Herndon had established the sincerity of his religious beliefs, the Court still
     finds there are genuine issues of material fact as to whether the March 3rd Memo was
     reasonably related to legitimate penological interests, because Defendants' motion does
28   not fully address each of the "reasonableness" factors set forth in *Turner*, 482 U.S. 78.

1   *Wilkinson*, 544 U.S. 709, 714 (2005)). "As such, RLUIPA is to be 'construed broadly in

2   favor of protecting an inmate's right to exercise his religious beliefs.'" *Jones*, 23 F.4th at

3   1140 (quoting *Warsolider v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)); *see also*

4   *Johnson v. Baker*, 23 F.4th 1209, 1214 (9th Cir. 2022) (citation omitted). However,

5   "[c]ourts are expected to apply RLUIPA's standard with due deference to the experience

6   and expertise of prison and jail administrators in establishing necessary regulations and

7   procedures to maintain good order, security and discipline, consistent with consideration

8   of costs and limited resources." *Hartmann*, 707 F.3d at 1124 (internal quotation marks

9   and citation omitted).

10          "Under RLUIPA, the challenging party bears the initial burden of proving that his

11   religious exercise is grounded in a sincerely held religious belief …, and that the

12   government's action substantially burdens his religious exercise." *Holt v. Hobbs*, 574 U.S.

13   352, 360-61 (2015) (citations omitted); *see also Jones*, 23 F.4th at 1140; *Johnson*, 23

14   F.4th at 1214.

15          If the plaintiff makes a showing of a substantial burden on the exercise of his

16   religion, the court's analysis then turns to whether the defendant has established that the

17   burden furthers "a compelling governmental interest," and does so "by the least restrictive

18   means." 42 U.S.C. § 2000cc-1(a), (b); *Holt*, 574 U.S. at 362 (citation omitted); *Jones*, 23

19   F.4th at 1141 (citations omitted); *Greene*, 513 F.3d at 988.

20          As an initial matter, an inmate cannot recover damages under RLUIPA against

21   prison officials. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011); *Wood v. Yordy*, 753 F.3d

22   899, 904 (9th Cir. 2014). Instead, "[a] RLUIPA plaintiff may only sue defendants in their

23   official capacities for *prospective injunctive relief*." *Jones*, 23 F.4th at n. 4 (emphasis

24   added).

25          Here, any relief requested by Herndon under RLUIPA is rendered moot as the

26   March 3rd Memo clearly applied only to Passover during the year 2020. (ECF No. 49 at

27   1; ECF No. 125.) Herndon does not dispute the applicability of the March 3rd Memo. Thus,

28   Herndon's request for relief under RLUIPA should be dismissed as moot.

1

### C.     First Amendment Establishment Clause Claim

2      "The Establishment Clause, applicable to state action by incorporation through the

3   Fourteenth Amendment, states that Congress shall make no law respecting an

4   establishment of religion." *Hartmann*, 707 F.3d at 1125 (internal citation and quotation

5   marks omitted). "This clause 'means at least' that '[n]either a state nor the Federal

6   Government…can pass laws which aid on religion, aid all religions, or prefer one religion

7   over another.'" *Id.* (citation omitted). "[A] prison regulation accommodating inmates' rights

8   under the First Amendment must do so without unduly preferring one religion over

9   another[.]" *Id.* (citation omitted).

10     Defendants' motion summarily asserts that Defendants did not prefer one religion

11   over another—namely Judaism over Messianic Judaism—and thus Defendants are

12   entitled to summary judgment on the Establishment Clause claim. (ECF No. 27 at 11-12.)

13   However, the plain language of the March 3rd Memo seems to show a preference for

14   Judaism over Messianic Judaism, or at a minimum, presents a genuine issue of material

15   fact as to whether there was preference made. Specifically, the March 3rd Memo laid out

16   that two actions were to take place in order for inmates to receive Kosher for Passover:

17   (1) that the institutional chaplain verify that the inmate's declared faith is *Jewish*; and (2)

18   that the inmate sign up for CFM no later than 7 days prior to the start of Passover. (ECF

19   No. 37-3 (emphasis added).)

20     While Williams states that "any reference to Jewish inmates applied equally to

21   inmate[s] whose declared faith was Judaism and inmates whose declared faith was

22   Messianic Judaism," (*See* ECF No. 37-4 at 3), a genuine issue of material fact is raised

23   by the response Herndon received to his grievance, which seem to single out Herndon's

24   Messianic Judaism faith as a reason for being denied Kosher meals for Passover.

25     In response to the First Level Grievance, Warden Garrett responded:

26     [t]he issue has been reviewed by Chaplain Davis, Culinary Supervisor Ms.
      Henry and at the direction of NDOC Deputy Director Williams those *inmates*

27     *who are not Jewish will not receive all meals during Passover, your faith*
      *affiliation is noted as Messianic Jewish which is not the same thing.* It is

28     noted that you have met one (participate in CFM) of the two criteria to

participate in Passover meals but you do not meet the second requirement and as such you only received one meal on one day during Passover. You were advised of this policy change well in advance of Passover in order for you to have the ability to comply with the directive from Deputy Director Williams.

(ECF No. 37-8 at 3 (emphasis added).)

Based on the above, there is question of fact as to whether there was a violation of the Establishment Clause, thus, Defendants' motions for summary judgment should be denied in this regard.

### D.    Fourteenth Amendment Equal Protection

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Shakur*, 514 F.3d at 891 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To prevail on an equal protection claim under § 1983, the plaintiff must establish that "the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Hartmann*, 707 F.3d at 1123 (quotation marks and citation omitted).

"[T]he Equal Protection Clause entitles each prisoner to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Shakur*, 514 F.3d at 891 (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972)). "This does not mean, however, that all prisoners must receive identical treatment and resources." *Hartmann*, 707 F.3d at 1123 (citing *Cruz*, 405 U.S. at 322 n.2).

In *Shakur*, the Ninth Circuit said the standard applied to an inmate's religious equal protection claim is the four-part reasonableness test under *Turner*, 482 U.S. 78. Under that test, the inmate cannot succeed "if the difference between the defendants' treatment of him and their treatment of [inmates of another faith group] is reasonably related to legitimate penological interests." *Id.* (citation and quotation marks omitted).

The *Turner* reasonableness factors are: (1) "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put

1   forward to justify it"; (2) "whether there are alternative means of exercising the right that

2   remain open to prison inmates"; (3) "the impact accommodation of the asserted

3   constitutional right will have on guards and other inmates, and on the allocation of prison

4   resources generally"; (4) the "absence of ready alternatives" and "the existence of

5   obvious, easy alternatives." *Turner*, 482 U.S. at 89-91; *see also O'Lone*, 482 U.S. at 349.

6       Defendants do not fully address each of the *Turner* factors in their motion for

7   summary judgment. Thus, they have not met their initial burden for purposes of the motion

8   for summary judgment. Accordingly, the motion should both be denied as to the

9   Fourteenth Amendment Equal Protection Clause claim.

10      **E.    Personal Participation**

11      Defendants assert there is no evidence that Defendants Davis, Garrett, Potter, or

12  Wickham were personally responsible for the alleged constitutional violations, as their

13  only role was as grievance responders. (ECF No. 37 at 18-19.) Defendants Garrett,

14  Potter, and Wickham responded to Herndon's grievance, (*See* ECF No. 37-8), but

15  Defendant Davis did not. Thus, the Court will analyze each separately.

16      "There are two elements to a section 1983 claim: (1) the conduct complained of

17  must have been under color of state law, and (2) the conduct must have subjected the

18  plaintiff to a deprivation of constitutional rights." *Jones v. Cmty. Redevelopment Agency*

19  *of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984). A prerequisite to recovery under the

20  Civil Rights Act, 42 U.S.C. § 1983, is that the plaintiff prove that the defendants deprived

21  him of a right secured by the Constitution and the laws of the United States. *Gomez v.*

22  *Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985). Liability under § 1983 arises only upon a

23  showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045

24  (9th Cir. 1989). A person deprives another "of a constitutional right, within the meaning

25  of section 1983, if he does an affirmative act, participates in another's affirmative acts, or

26  omits to perform an act which he is legally required to do that causes the deprivation of

27  which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

28  "[V]icarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each

1   Government-official defendant, through the official's own individual actions, has violated

2   the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

3         Generally, one cannot state a constitutional claim based on their dissatisfaction

4   with the grievance process. *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1157 (E.D. Wash.

5   2014). Where the defendant's only involvement in the allegedly unconstitutional conduct

6   is "the denial of administrative grievances or the failure to act, the defendant cannot be

7   liable under § 1983." *Id.* (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

8   However, the issue of whether responding to a grievance can rise to the level of personal

9   participation required for a § 1983 claim was addressed by the Ninth Circuit in *Snow v.*

10  *McDaniel*, 681 F.3d 978 (9th Cir. 2012)., *overruled on other grounds in Peralta v. Dillard*,

11  744 F.3d 1076 (9th Cir. 2014). In *Snow*, the inmate plaintiff had submitted several

12  grievances about the denial of a recommended hip surgery; there was testimony that the

13  warden and associate warden were aware of the grievances, and that they had reviewed

14  an order stating that the inmate needed a hip replacement. *Snow*, 681 F.3d at 989.

15  Defendants argued that there was no evidence in the record that they were personally

16  involved in any of the medical treatment decisions. *Id.* The Ninth Circuit, however, said

17  that their review of the grievance was sufficient to demonstrate that the warden and

18  associate warden were aware of the inmate's serious hip condition and failed to act to

19  prevent further harm so that the warden and associate warden were not entitled to

20  summary judgment based on lack of personal participation. *Id.*

21             **1.**      **Defendants Garret, Potter, and Wickham**

22        Here, Defendants Garrett, Potter, and Wickham each responded to a different level

23  of Herndon's grievance related to not receiving his Kosher meals for Passover. (*See* ECF

24  No. 37-8 (Grievance No. 2006-30-99537); 37-5 (declaration of Defendant Potter); 37-6

25  (declaration of Defendant Garrett); 37-12 (declaration of Defendant Wickham).)

26  Defendants Garrett, Potter, and Wickham's responses to Herndon's grievances could be

27  sufficient to meet the personal participation required for a § 1983 suit if, through their own

28  individual actions, they violated the Constitution. However, there is no evidence that these

1    Defendants were otherwise involved with the creation or implementation of the March 3rd

2    Memo. Put simply, there is no evidence they caused the alleged constitutional violation,

3    only that they denied Herndon's grievances. Additionally, "[h]olding a prison official

4    personally responsible for damages simply because he is familiar with a prisoner's

5    circumstances through direct communications with the prisoner and through

6    communications with his subordinates [or caseworkers] is such a broad theory of liability

7    that it is inconsistent with the personal responsibility requirement for assessing damages

8    against public officials in a 42 U.S.C. § 1983 suit." *May v. Williams*, No. 2:10-CV-576-

9    GMN-LRL, 2012 WL 1155390, at *3 (D. Nev. Apr. 4, 2012) (citing *Crowder v. Lash*, 687

10   F.2d 996, 1005-1006 (7th Cir. 1982); *see also Jackson, v. State of Nevada*, No. 2:16-cv-

11   00995-APG-NJK, 2019 WL 6499106, at *7 (D. Nev. Dec. 3, 2019) ("[C]ourts have held

12   that merely denying a grievance without some decision-making authority or ability to

13   resolve the underlying issue grieved is not enough to establish personal participation.").

14         Because Herndon present no evidence that Defendants Garrett, Potter, or

15   Wickham did anything more than simply respond to grievances, this does not rise to the

16   level of participation required for a § 1983 suit. Based on their lack of personal

17   participation, Defendants Garrett, Potter, and Wickham are entitled to summary judgment

18   on all claims in this action.

19                        **2.    Defendant Davis**

20         While Defendants argue Defendant Davis only responded to grievances and thus

21   did not personally participate in the alleged constitutional violations, (ECF No. 37 at 18-

22   19), the evidence in the record shows otherwise. First, as noted above, there is no

23   evidence that Davis responded to the grievance in this case. (ECF No. 37-8.) Second,

24   while Davis asserts that he did not play any role in making determinations for inmates to

25   receive Passover Meals at LCC, (*See* ECF No. 37-10 at 3), it appears he may have had

26   a role in formulating or implementing the March 3rd Memo. In particular, the response to

27   the First Level Grievance noted that Defendant Davis had reviewed the issue:

28         [t]he issue has been reviewed by *Chaplain Davis*, Culinary Supervisor Ms.

Henry and at the direction of NDOC Deputy Director Williams those *inmates who are not Jewish will not receive all meals during Passover, your faith affiliation is noted as Messianic Jewish which is not the same thing.* It is noted that you have met one (participate in CFM) of the two criteria to participate in Passover meals but you do not meet the second requirement and as such you only received one meal on one day during Passover. You were advised of this policy change well in advance of Passover in order for you to have the ability to comply with the directive from Deputy Director Williams.

(ECF No. 37-8 at 3 (emphasis added).) At a minimum, there is a genuine issue of material fact as to the extent of Davis's participation, and therefore summary judgment should not be granted to Defendant Davis on this basis.

### F.    Qualified Immunity

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown*, 751 F.3d at 988–89 (citing *Pennhurst*, 465 U.S. at 100). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the Court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). The Court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240–42. A right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th

1   Cir. 2003) (quoting *Anderson*, 483 U.S. at 640).

2   "[J]udges of the district courts… should be permitted to exercise their sound

3   discretion in deciding which of the two prongs of the qualified immunity analysis should

4   be addressed first in light of the circumstances in the particular case at hand." *Pearson*,

5   555 U.S. at 236. "[W]hether a constitutional right was violated… is a question of fact."

6   *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). While the

7   Court decides as a matter of law the "clearly established" prong of the qualified immunity

8   analysis, only the jury can decide the disputed factual issues. *See Morales v. Fry*, 873

9   F.3d 817, 824-25 (9th Cir. 2017); *Reese v. Cty. Of Sacramento*, 888 F.3d 1030, 1037 (9th

10  Cir. 2018).

11      Defendants contend that they are entitled to qualified immunity because, in

12  addition to there being no constitutional violations, the Defendants were not on clear

13  notice that their actions violated Herndon's constitutional rights. (ECF No. 37 at 14-15.)

14      However, it was clearly established that a prison official violates the Free Exercise

15  Clause if he or she substantially burdens an inmate's religious exercise and the basis for

16  burdening the religious exercise is not reasonably related to legitimate penological

17  interests. *Hartmann*, 707 F.3d at 1122; *Shakur*, 514 F.3d at 883-84.

18      It was clearly established that a prison official violates the Establishment Clause if

19  he or she prefers one religion over another. *Hartmann*, 707 F.3d at 1125.

20      Finally, it is clearly established that a prison official violates the Equal Protection

21  Clause if an inmate is not given "a reasonable opportunity of pursuing his faith comparable

22  to the opportunity afforded fellow prisoners who adhere to conventional religious

23  precepts." *Shakur*, 514 F.3d at 891 (quotation marks and citation omitted).

24      Taking the facts in the light most favorable to Herndon, a fact finder could

25  determine that Defendants violated these rights. For these reasons, Defendants are not

26  entitled to qualified immunity.

27  ///

28  ///

1   **IV.   CONCLUSION**

2       For good cause appearing and for the reasons stated above, the Court

3   recommends that Defendants' motion for summary judgment, (ECF No. 37), be granted

4   in part and denied in part.

5       The parties are advised:

6       1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of

7   Practice, the parties may file specific written objections to this Report and

8   Recommendation within fourteen days of receipt. These objections should be entitled

9   "Objections to Magistrate Judge's Report and Recommendation" and should be

10  accompanied by points and authorities for consideration by the District Court.

11      2.   This Report and Recommendation is not an appealable order and any

12  notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the

13  District Court's judgment.

14  **V.   RECOMMENDATION**

15      **IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary

16  judgment, (ECF No. 37), be **GRANTED IN PART AND DENIED IN PART** as follows:

17      • As to the First Amendment Free Exercise Clause violation, the Court

18        recommends that the motion be **GRANTED** as to Defendants Garrett,

19        Potter, and Wickham, who should be **DISMISSED** based on a lack of

20        personal participation, but **DENIED** as to Defendants Davis and Williams.

21      • As to the RLUIPA claim, the Court recommends that the motion be

22        **GRANTED** based on mootness of the claim.

23      • As to the First Amendment Establishment Clause violation, the Court

24        recommends that the motion be **GRANTED** as to Defendants Garrett,

25        Potter, and Wickham, who should be **DISMISSED** based on a lack of

26        personal participation, but **DENIED** as to Defendants Davis and Williams.

27      • As to the Fourteenth Amendment equal protection claim, the Court

28        recommends that the motion be **GRANTED** as to Defendants Garrett,

Potter, and Wickham, who should be **DISMISSED** based on a lack of personal participation, but **DENIED** as to Defendants Davis and Williams.

- Defendants' assertion that they are entitled to qualified immunity should be **DENIED**.

- Defendants Garrett, Potter, and Wickham should be **DISMISSED** from the entirety of this action.

In sum, the Court recommends that only the following proceed:

- First Amendment Free Exercise Clause violation against Defendants Davis and Williams.

- First Amendment Establishment Clause violation as to Defendants Davis and Williams.

- Fourteenth Amendment equal protection claim as to Defendants Davis and Williams.

**DATED**: March 12, 2024

_____
**UNITED STATES MAGISTRATE JUDGE**